UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| DEIRDRE KNIGHT ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 2:18-cv-02112 |
| ) | |
| MEMPHIS BONDING COMPANY,, ) | |
| INCORPORATED, GEORGE A. HITT, ) | |
| MELODY MARTIN, ) | |
| BROOKS MCGOWAN and ) | |
| TRACY VAN PITTMAN ) | |
| ) | |
| Defendants ) | |
| ) | |

_____

# COMPLAINT
_____

COMES NOW Plaintiff DEIRDRE KNIGHT, by and through undersigned counsel, and files her Complaint for violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 ("RICO") , violations of the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), violations of the Tennessee Consumer Protection Act of 1977 (T.C.A. § 47-18-101, *et seq.*) ("TCPA"), fraud and conversion against Defendants MEMPHIS BONDING COMPANY, INCORPORATED, GEORGE A. HITT, MELODY MARTIN and BROOKS MCGOWAN, stating the following:

## PARTIES

1. Plaintiff Deirdre Knight ("Ms. Knight") is an adult resident citizen of Memphis, Shelby County, Tennessee.

2. Defendant Memphis Bonding Company, Incorporated ("MBC") is a corporation

organized under the laws of the State of Tennessee and doing business in Memphis, Shelby County, Tennessee, which may be served with process through an officer, managing or general agent, or other authorized agent at its principal place of business located at 279 Exchange Ave., Memphis, Tennessee 38105.

3. Defendant George A. Hitt is an adult resident citizen of Memphis, Shelby County, Tennessee, who may be served with process where he may be found. Upon information and belief, Mr. Hitt is the sole shareholder of MBC.

4. Defendant Melody Martin is an adult resident citizen of Memphis, Shelby County, Tennessee, who may be served with process where she may be found.

5. Defendant Brooks McGowan is an adult resident citizen of Memphis, Shelby County, Tennessee, who may be served with process where she may be found.

6. Defendant Tracy Van Pittman is an adult resident citizen of Memphis, Shelby County, Tennessee, who may be served with process where she may be found.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction to hear this Complaint and to adjudicate Plaintiff's RICO claims stated herein under 18 U.S.C. § 1964(c); Plaintiff's TILA claims under 15 U.S.C. § 1640(e); and 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in the District and a substantial part of the events giving rise to the claims stated in this Complaint occurred in the District.

## FACTUAL BACKGROUND

9. On or about January 29, 2014, Ms. Knight's daughter Melanie Williams was

arrested in Memphis, Shelby County, Tennessee. The bail bond set by the Court to secure Ms. Williams' appearance in Court was set at $100,000. Ms. Williams and her fiancé Danny Phillips apparently contacted MBC as a bail bondsman to assist with posting a bond for Ms. Williams' release.

10. At some point, Defendant Melody Martin, who represented that she was the bonding agent for MBC, appeared in person at Ms. Knight's house. Ms. Martin was alone and not accompanied by anyone else from MBC. Ms. Martin explained that she was working to secure the release of Ms. Williams, and that Ms. Knight needed to sign a document to pledge her house as security for Ms. Williams to appear in court. Ms. Knight stated emphatically that she did not have any money to pay for Ms. Williams to get out of jail, and Ms. Martin represented that Ms. Knight only had to sign the document to secure her daughter's release. Ms. Martin also represented that the security (in the form of the deed of trust) would be canceled as long as Ms. Williams appeared in court. To further make her point, Ms. Martin even said that Ms. Knight's husband would not need to know about the security, and as long as Ms. Williams appeared in court, Ms. Knight's house would not be in jeopardy. Based on those representations, Ms. Knight remembers signing a single document with no one else present to witness it or notarize the signature.

11. On March 12, 2014, MBC filed a Deed of Trust purportedly signed by Ms. Knight as Instrument Number 14026659 with the Register of Deeds of Shelby County, Tennessee. (Attached as Exhibit 1). According to the Register's Office, MBC mailed the Deed of Trust to the Office to be filed and mailed back. Also according to the Register's Office, MBC paid $125.70 for the filing fee in the form of a check.

12. The Deed of Trust is dated February 27, 2014, but the signature itself is not dated.

The instrument is also curious in that it names "Memphis Bonding Company" as the Trustee and Grantee of Ms. Knight's residence located at 3317 Carnes Ave. (the "Real Property"), and also references "Memphis Bonding Co., Inc." as the creditor on a debt of $100,000, "evidenced by … Collateral for Melanie Williams." On the signature page, below the purported signature of Ms. Knight, there is a blank corporate acknowledgment with a Notary Seal of "B. McGowan" and the signature of "B. McGowan." "B. McGowan" has been identified as Brooks McGowan. Ms. McGowan apparently notarized the document without Ms. Knight's presence or knowledge.

13. On February 19, 2015, the charges against Melanie Williams were finally resolved. Ms. Williams made all required appearances in court, and the bail bond was never forfeited to the court.

14. Following disposition of the charges against Ms. Williams, Ms. Knight contacted MBC about removing the lien on her home. To her disbelief, Ms. Knight was informed that she owed over $7,000 to MBC. Not having any paperwork to verify that debt, on May 30, 2017, Ms. Knight filed suit in Chancery Court of Shelby County, Tennessee, to remove the cloud on her title and challenging the validity of the Deed of Trust. In response, MBC filed a counterclaim for an alleged debt in the amount of $7,450 "plus accrued interest." In discovery in that action, MBC provided several documents which evidence a scheme of conduct clearly intended to coerce homeowners like Ms. Knight into paying money to MBC. Defendant Tracy Van Pittman signed the discovery responses under oath for MBC.

15. The documents which appear to form the basis of MBC's claim to money owed by Ms. Knight are: (1) an Indemnity Agreement (attached as Exhibit 2), (2) a Promissory Note for $100,000 (attached as Exhibit 3) and (3) a Promissory Note for $8,025 (attached as Exhibit 4). Ms. Knight first learned of the existence of these documents only after she filed suit against

MBC in May 2017. In addition to learning about these documents, Ms. Knight also learned that "Melody" (presumably Melody Martin), had contacted a financial institution which holds a deed of trust on Ms. Knight's home and inquired about Ms. Knight's obligation to that institution without Ms. Knight's knowledge or permission to do so. "Melody" then obtained a "pay off" amount from that institution in a letter addressed to Ms. Knight and her husband. This was accomplished by use of a fax over a telephone wire. After discovering that Ms. Knight did not owe any money to that institution, Ms. Martin drafted the Deed of Trust at issue and appeared at Ms. Knight's home. Despite all of the issues with forged names on the claimed debt documents, the unauthorized contacts with financial institutions and the falsified notary on the Deed of Trust (which could not have been filed with the Register's Office without a notarized signature), MBC has refused to release the Deed of Trust which remains as a $100,000 cloud on Ms. Knight's title to her home. In fact, in sworn discovery responses signed by Tracy Van Pittman, MBC claims that Ms. Knight signed the Deed of Trust on February 13, 2014, in the presence of Melody Martin and Brooks McGowan. This sworn testimony cannot be true according to the documents provided by MBC.

16.     A cursory search of the online records of the Office of the Register of Deeds in Shelby County, Tennessee, and even the land records of the Chancery Court of DeSoto County, Mississippi, indicates that over the past several years, MBC has been a prolific filer of Deeds of Trust identical in form to the one purportedly signed by Ms. Knight.

## **COUNT ONE: VIOLATIONS OF RICO**

17.     The Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count One.

18.     Plaintiff is a "person" with standing to sue within the meaning of 18 U.S.C. §§

1961(3) and 1964(c).

19. Each of the Defendants is a RICO "person" within the meaning of 18 U.S.C. § 1961(3) because each is an entity capable of holding a legal or beneficial interest in property.

20. All Defendants have associated together as an association-in-fact, and therefore an enterprise within the meaning of 18 U.S.C. § 1961(4). Such RICO Enterprise has an ongoing relationship with a common purpose of using false authentication features to file Deeds of Trust as alleged "security" on false or illegal debts and collecting money from homeowners who have lost access to the equity in their homes as a result of the fraudulently filed Deeds of Trust.

21. The RICO Enterprise is engaged in interstate commerce in that its activities and transactions relating to the arrangement of bail bond agreements, collection of bail bond fees and the practice of taking title to Real Property in both Shelby County, Tennessee, and DeSoto County, Mississippi, requires movement and communications across state lines and use of interstate facilities.

22. The members of the RICO Enterprise function as a continuing unit in collecting "debts" under the Enterprise outlined below.

23. The RICO Enterprise consists of the following actions by MBC:

- MBC, through individual bail bonding agents like Melody Martin, offers to write a bail bond ("appearance bond") for a person incarcerated in Shelby County, Tennessee;

- As part of the "application" process, MBC requires a friend or relative of the person incarcerated to sign an "Indemnity Agreement" which lists the amount of the appearance bond as the total, but only potential, liability (if the incarcerated person does not appear in court after being released under the bail bond);

6

- MBC also requires the "indemnitors" to sign a "Promissory Note" on the amount of the potential liability if the appearance bond is forfeited and a separate "Promissory Note" on any unpaid portion of the "Premium" which MBC is allowed to charge under Tennessee law.  If MBC cannot obtain signatures on these documents—as in Ms. Knight's case—MBC simply forges the signature.  In either case, MBC refuses to provide copies of these documents to any person who allegedly signed them;

- Either at the same time as the "indemnitors" sign other documents, or at a later date, if the "indemnitor" owns Real Property, MBC requires the "indemnitor" to sign a Deed of Trust securing the entire amount of the potential liability on the appearance bond.  MBC and its bail bonding agents inform the "indemnitor" that the Deed of Trust is only collateral to ensure the appearance of the incarcerated person in court.  The Deed of Trust even states that it is "collateral for [incarcerated person]."  The Deed of Trust is not signed in front of notary public;

- MBC employs a notary public to affix a notary seal to the Deed of Trust (which is required under both Tennessee and Mississippi law to file a document securing Real Property at the recording office);

- MBC determines the filing fee required to file the Deed of Trust with the appropriate recording office then places the Deed of Trust with a check for the filing fee in the U.S. Mail for delivery to the recording office;

- MBC's check is negotiated using the wire system employed by the United States banking system;

- After the charges against the formerly incarcerated person are resolved and

7

       liability on the appearance bond is terminated, MBC does not (as was represented) return or release the Deed of Trust;

- MBC does not actively attempt to collect the "debts" it has fraudulently secured, and MBC does not seek to foreclose on the Deed of Trust. The "indemnitor" usually realizes that the Deed of Trust (in the exorbitant amount of the former, potential liability on the appearance bond) exists in the public record when the "indemnitor" performs a title search in anticipation of selling the Real Property or obtaining credit using the Real Property as security. At that point, when the "indemnitor" contacts MBC, MBC informs the "indemnitor" of the "debt" but MBC refuses to provide any documentation about the "debt." Instead, MBC uses its ill-gotten leverage to extort the payment of a "loan" which is illegal under state law in the first place.

24. The RICO Enterprise described above constitutes an unlawful pattern of racketeering under 18 U.S.C. 1962. The pattern is established by several Complaints in similar form to this one which have or will be filed by the time of service of process (as evidenced by Deeds of Trust filed with the Register of Deeds of Shelby County, Instrument Numbers 16017925 and 15099010, for example). The acts of "racketeering" defined under 18 U.S.C. 1961 include extortionate credit extension, mail fraud, wire fraud and fraud and related activity in connection with identification documents, authentication features and information. MBC commits the unlawful acts in conspiracy with its sole shareholder Hitt and agents/employees (Martin, McGowan and Van Pittman) to do the same. The Defendants pose a continuous threat of engaging in those racketeering acts.

25. Those practices are a regular way of conducting the ongoing business of each

Defendant and of conducting or participating in the ongoing enterprise.

26.     On Plaintiff's RICO claim against all Defendants, Plaintiff seeks statutory and/or actual damages of not less than $100,000.00, costs and attorney's fees.

## COUNT TWO: VIOLATIONS OF TILA

27.     Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count Two, which is pleaded additionally and alternatively in the event the signatures of Ms. Knight on the above-described debt documents prove to be authentic, and for Count Two, Plaintiff alleges violations of TILA against Defendant MBC.

28.     Plaintiff avers that the agreement to defer payment of the bail fee constitutes consumer credit extended for a personal or family purpose within the meaning of TILA, 15 U.S.C. § 1602(g) and (i), and Regulation Z, 12 C.F.R. § 1026.2(a)(12).

29.     MBC regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the entity to which the transaction which is the subject of this action is initially payable, making MBC a creditor within the meaning of TILA, 15 U.S.C. § 1602(g) and Regulation Z, 12 C.F.R. § 1026.2(a)(17).

30.     MBC violated the requirements of TILA and Regulation Z in the following and other respects:

    a. By failing to provide the required disclosures clearly and conspicuously in writing, segregated from everything else and in a form which the Plaintiff could keep: any finance charge, the amount financed, a separate itemization of the amount financed, the payment schedule, and a statement that the consumer should refer to the appropriate contract document for information about nonpayment,

    default, the right to accelerate the maturity of the obligation and prepayment rebates and penalties, in violation of 15 U.S.C. § 1638(b) and Regulation Z, 12 C.F.R. § 1026.17;

b. By failing to provide a statement that a security interest has been taken in (A) the property which is purchased as a part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type, as required by 15 U.S.C. § 1638(a)(9);

c. By failing to provide a statement in the case of a consumer credit transaction that is secured by the principal dwelling of the consumer, in which the extension of credit may exceed the fair market value of the dwelling, a clear and conspicuous statement that (A) the interest on the portion of the credit extension that is greater than the fair market value of the dwelling is not tax deductible for the Federal income tax purposes; and (B) the consumer should consult a tax adviser for further information regarding the deductibility of interest and charges;

d. By failing to provide the number, amounts, and timing of payments scheduled to repay the obligation, in violation of 15 U.S.C. § 1638(a)(6) and Regulation Z, 12 C.F.R. § 1026.18(g).

31. On Plaintiff's TILA claims against Defendant MBC, Plaintiff seeks statutory and/or actual damages and, alternatively, rescission of the credit agreement(s) allegedly secured by the Deed of Trust.  Plaintiff also seeks all costs and attorney's fees.

### COUNT THREE: VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT of 1977 (T.C.A. § 47-18-101, *et seq.*)

32. Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count Three, which is pleaded additionally and alternatively, and for Count

Three, Plaintiff alleges that Defendant MBC violated the TCPA.

33. Plaintiff alleges that Defendant MBC violated the TCPA by engaging in unfair and deceptive acts and practices in the course of selling their services to the Plaintiff.

34. Defendant MBC is a "person" as defined by the Tennessee Consumer Protection Act, T.C.A. §47-18-103(9).

35. MBC violated the TCPA, specifically T.C.A. § 47-18-104(a) by employing unfair or deceptive acts affecting the conduct of trade or commerce. The unfair or deceptive acts include representing that Plaintiff only signed the Deed of Trust as security for Ms. Williams' appearance in court, and not for any underlying obligation to repay a loan or other extension of credit. Further, pursuant to Tennessee law, any bail bondsman who accepts collateral for a bail bond must return that collateral when liability on the bond is terminated. MBC's practice of obtaining a Deed of Trust and alleging that it is security for otherwise unsecured notes specifically violates T.C.A. § 47-18-104(b)(12) which declares "representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law" an unlawful unfair or deceptive practice.

36. As a result of MBC's violation of the TCPA, it is liable to Plaintiff for all actual damages not less than $100,000.00, as well as attorney's fees and costs pursuant to TCPA, T.C.A. § 47-18-109(e)(1).

37. In addition, to the extent that Defendant's violations were intentional (as opposed to merely negligent), the actual damages to Plaintiff should be trebled pursuant to the TCPA, T.C.A. § 47-18-109(a)(3).

**COUNT FOUR: FRAUD**

38.     Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count Four, which is pleaded additionally and alternatively, and for Count Four, Plaintiff alleges that Defendants MBC, Hitt, Martin, McGowan and Van Pittman committed fraud individually and as part of a civil conspiracy.

39.     Defendants individually and as part of conspiracy made material representations of fact to Plaintiff Deirdre Knight.  First, MBC and its owner Hitt employed its agents/employees to make the representation that by signing a Deed of Trust, Ms. Knight was only securing the appearance of her daughter Ms. Williams in court and not pledging security for any underlying debt.  Those representations are made in the Indemnity Agreement and Promissory Notes (which are silent as to any security) and in the Deed of Trust (which is silent as to any underlying debt). Ms. Martin continued making that misrepresentation when she explicitly told Ms. Knight that the security would be returned if Ms. Williams showed up in court.  Finally, Ms. McGowan made a material misrepresentation that she witnessed the signing of the Deed of Trust when she was not even present at Ms. Knight's house during the conversation between Ms. Martin and Ms. Knight. The false representations, taken separately and as a whole in furtherance of their conspiracy, were relied upon by Ms. Knight to her detriment.  To date, Ms. Knight's house remains encumbered to the extent of $100,000 even though MBC itself claims that she owes $7,450.  Ms. Van Pittman has continued the conspiracy in attempting to collect the fraudulent debt, even signing false Answers to Interrogatories on behalf of MBC in the action pending in Chancery Court in Shelby County, Tennessee.  This fraudulent scheme has caused Ms. Knight damages in the loss of access to credit on the equity in her home.

40. On Plaintiff's fraud claim, Plaintiff seeks the damages for the full value of her lost property not less than $100,000.00 and punitive damages against all Defendants jointly and severally.

## COUNT FIVE: CONVERSION

41. Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count Five, which is pleaded additionally and alternatively, and for Count Five, Plaintiff alleges that Defendants MBC, Hitt, Martin, McGowan and Van Pittman committed conversion of Plaintiff's property, individually and as part of a civil conspiracy.

42. Defendants' scheme outlined throughout this Complaint served to deprive Ms. Knight of the title and enjoyment of her Real Property. Defendants' actions were intentional, willful and done with malice.

43. As a result of the conversion, Ms. Knight seeks damages for the full value of her Real Property and punitive damages against all Defendants jointly and severally.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

1. On Count One, award Plaintiff actual and/or statutory damages not less than $100,000.00, costs, attorneys' fees and any other relief (including equitable relief) available under RICO against all Defendants;

2. On Count Two, award Plaintiff actual and/or statutory damages, costs, attorneys' fees and any other relief (including equitable relief) available under TILA against Defendant MBC;

3. On Count Three, award Plaintiff actual and/or statutory damages not less than $100,000.00 (plus treble damages), costs, attorneys' fees and any other relief available under TCPA against Defendant MBC;

4. On Count Four, award Plaintiff actual damages not less than $100,000.00 and punitive damages against all Defendants jointly and severally for fraud;

5. On Count Five, award Plaintiff actual damages not less than $100,000.00 and punitive damages against Defendants jointly and severally for conversion; and

6. Award any other additional relief to which Plaintiff may be entitled at law or equity.

Submitted this 20th day of February, 2018.

RESPECTFULLY SUBMITTED,

s/ Matthew F. Jones
Matthew F. Jones (MS 100430, TN BPR # 25825)
MEMPHIS AREA LEGAL SERVICES, INC.
22 N. Front Street, 11th Floor
Memphis, TN 38103
(901) 523-8822
(901) 255-3429 (direct)
(901) 843-2929 (fax)
mjones@malsi.org