UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| DEIRDRE KNIGHT ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 2:18-cv-02112 |
| ) | |
| MEMPHIS BONDING COMPANY, ) | |
| INCORPORATED, GEORGE A. HITT, ) | |
| MELODY MARTIN, ) | |
| BROOKS MCGOWAN and ) | |
| TRACY VAN PITTMAN ) | |
| ) | |
| Defendants ) | |
| ) | |

_____

**FIRST AMENDED COMPLAINT**
_____

COMES NOW Plaintiff DEIRDRE KNIGHT, by and through undersigned counsel, and, pursuant to Fed. R. Civ. P. 15(a)(1)(B), files her First Amended Complaint against Defendants MEMPHIS BONDING COMPANY, INCORPORATED, GEORGE A. HITT, MELODY MARTIN, BROOKS MCGOWAN and TRACY VAN PITTMAN, jointly and separately as indicated below, for violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") , violations of the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), violations of the Tennessee Consumer Protection Act of 1977, T.C.A. § 47-18-101, *et seq.*, ("TCPA"), fraud, and professional negligence/malpractice, stating the following:

**PARTIES**

1. Plaintiff Deirdre Knight ("Ms. Knight") is an adult resident citizen of Memphis,

Shelby County, Tennessee.

2. Defendant Memphis Bonding Company, Incorporated ("MBC") is a corporation organized under the laws of the State of Tennessee and doing business in Memphis, Shelby County, Tennessee. MBC has already appeared in this cause.

3. Defendant George A. Hitt is an adult resident citizen of Memphis, Shelby County, Tennessee. Upon information and belief, Mr. Hitt is the sole shareholder of MBC. Mr. Hitt has already appeared in this cause.

4. Defendant Melody Martin is an adult resident citizen of Memphis, Shelby County, Tennessee. Ms. Martin has already appeared in this cause.

5. Defendant Brooks McGowan is an adult resident citizen of Memphis, Shelby County, Tennessee, who may be served with process where he may be found.

6. Defendant Tracy Van Pittman is an adult resident citizen of Memphis, Shelby County, Tennessee. Mr. Pittman has already appeared in this cause.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction to hear this Complaint and to adjudicate Plaintiff's RICO claims stated herein under 18 U.S.C. § 1964(c); Plaintiff's TILA claims under 15 U.S.C. § 1640(e); and 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in the District and a substantial part of the events giving rise to the claims stated in this Complaint occurred in the District.

## FACTUAL BACKGROUND

9. On or about January 29, 2014, Ms. Knight's daughter Melanie Williams was

arrested in Memphis, Shelby County, Tennessee. The bail bond set by the Court to secure Ms. Williams' appearance in Court was set at $100,000. Ms. Williams and her fiancé Danny Phillips apparently contacted MBC as a bail bondsman to assist with posting a bond for Ms. Williams' release.

10. At some point, Defendant Melody Martin, who represented that she was the bonding agent for MBC, appeared in person at Ms. Knight's house. Ms. Martin was alone and not accompanied by anyone else from MBC. Ms. Martin explained that she was working to secure the release of Ms. Williams, and that Ms. Knight needed to sign a document to pledge her house as security for Ms. Williams to appear in court. Ms. Knight stated emphatically that she did not have any money to pay for Ms. Williams to get out of jail, and Ms. Martin represented that Ms. Knight only had to sign the document to secure her daughter's release. Ms. Martin also represented that the security (in the form of the deed of trust) would be canceled as long as Ms. Williams appeared in court. To further make her point, Ms. Martin even said that Ms. Knight's husband would not need to know about the security, and as long as Ms. Williams appeared in court, Ms. Knight's house would not be in jeopardy. Based on those representations, Ms. Knight remembers signing a single document with no one else present to witness it or notarize the signature.

11. On March 12, 2014, MBC filed a Deed of Trust purportedly signed by Ms. Knight as Instrument Number 14026659 with the Register of Deeds of Shelby County, Tennessee. (Attached as Exhibit 1). According to the Register's Office, MBC mailed the Deed of Trust to the Office to be filed and mailed back. Also according to the Register's Office, MBC paid $125.70 for the filing fee in the form of a check.

12. The Deed of Trust is dated February 27, 2014, but the signature itself is not dated.

3

The instrument is also curious in that it names "Memphis Bonding Company" as the Trustee and Grantee of Ms. Knight's residence located at 3317 Carnes Ave. (the "Real Property"), and also references "Memphis Bonding Co., Inc." as the creditor on a debt of $100,000, "evidenced by … Collateral for Melanie Williams." On the signature page, below the purported signature of Ms. Knight, there is a blank corporate acknowledgment with a Notary Seal of "B. McGowan" and the signature of "B. McGowan." "B. McGowan" has been identified as Brooks McGowan, who was a former independent bail bondsmen and recovery agent ("bounty hunter") for MBC. Mr. McGowan apparently notarized the document without Ms. Knight's presence or knowledge.

13.    On February 19, 2015, the charges against Melanie Williams were finally resolved. Ms. Williams made all required appearances in court, and the bail bond was never forfeited to the court.

14.    Following disposition of the charges against Ms. Williams, Ms. Knight contacted MBC about returning or canceling the document she had signed. To her disbelief, Ms. Knight was informed that she owed over $7,000 to MBC. Not having any paperwork to verify that debt, on May 30, 2017, and after learning that the Deed of Trust had been filed with the Register of Deeds, Ms. Knight filed suit in Chancery Court of Shelby County, Tennessee, to remove the cloud on her title and challenging the validity of the Deed of Trust. In response, MBC filed a counterclaim for an alleged debt in the amount of $7,450 "plus accrued interest." In discovery in that action, MBC provided several documents which evidence a scheme of conduct clearly intended to coerce homeowners like Ms. Knight into paying additional money (in addition to whatever the criminal defendant has already paid) to MBC. Defendant Tracy Van Pittman signed the discovery responses under oath for MBC.

15.    The documents which appear to form the basis of MBC's claim to money owed

by Ms. Knight are: (1) an Indemnity Agreement (attached as Exhibit 2), (2) a Promissory Note for $100,000 (attached as Exhibit 3) and (3) a Promissory Note for $8,025 (attached as Exhibit 4). Ms. Knight first learned of the existence of these documents only after she filed suit against MBC in May 2017. In addition to learning about these documents, Ms. Knight also learned that "Melody" (presumably Melody Martin), had contacted a financial institution which holds a deed of trust on Ms. Knight's home and inquired about Ms. Knight's obligation to that institution without Ms. Knight's knowledge or permission to do so. "Melody" then obtained a "pay off" amount from that institution in a letter addressed to Ms. Knight and her husband. Apparently, after discovering that Ms. Knight did not owe any money to that institution, Ms. Martin drafted the Deed of Trust at issue and appeared at Ms. Knight's home. Despite all of the issues with forged names on the claimed debt documents, the unauthorized contacts with financial institutions and the falsified notary on the Deed of Trust (which could not have been filed with the Register's Office without a notarized signature), MBC has refused to release the Deed of Trust which remains as a $100,000 cloud on Ms. Knight's title to her home. In fact, in sworn discovery responses signed by Tracy Van Pittman, MBC claims that Ms. Knight signed the Deed of Trust on February 13, 2014, in the presence of Melody Martin and Brooks McGowan. This sworn testimony cannot be true according to the documents provided by MBC.

16. MBC's apparent practice of taking a Deed of Trust, not merely as indemnity in the event that a bail bond is forfeited, but as on-going, indefinite security for the repayment of unpaid bond premiums, interest, fees or other costs, is contrary to Tennessee law. Under T.C.A. § 40-11-126(8), a professional bail bondsman ***cannot***:

> Accept anything of value from a principal except the premium; provided, that the bondsman shall be permitted to accept collateral security or other indemnity from the principal ***which shall be returned upon final termination of liability on the bond***. The

5

> collateral security or other indemnity required by the bondsman must be reasonable in relation to the amount of the bond. When a bail bondsman accepts collateral, the bondsman shall give a written receipt for the collateral, and this receipt shall give in detail a full description of the collateral received and the terms of redemption;

(Emphasis added).

17. A cursory search of the online records of the Office of the Register of Deeds in Shelby County, Tennessee, and even the land records of the Chancery Court of DeSoto County, Mississippi, indicates that over the past several years, MBC has been a prolific filer of Deeds of Trust identical in form to the one purportedly signed by Ms. Knight. In fact, the owner of MBC has regularly named himself, Mr. George Hitt, as either the grantee or trustee of Deeds of Trust related to bail bonds originated with MBC. As such, Mr. Hitt is clearly personally aware of the regular activity of MBC in filing Deeds of Trust. All deeds of trust filed in Tennessee and Mississippi were filed through the use of the mail.

18. Three other lawsuits with very similar allegations regarding Deeds of Trust held by Memphis Bonding Company have been filed in this Court: *Robert Bailey v. Memphis Bonding Company, Incorporated*, Cause No. 2:18-cv-02115; *Kevin Sharp v. Memphis Bonding Company, Incorporated*, Cause No. 2:18-cv-2143; and *Glenn Ray and Loris Shepard v. Memphis Bonding Company, Incorporated*, Cause No. 2:18-cv-2144.

### COUNT ONE: VIOLATIONS OF RICO

19. The Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count One.

20. Plaintiff is a "person" with standing to sue within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

21. MBC is a RICO "person" within the meaning of 18 U.S.C. § 1961(3) because it is

an entity capable of holding a legal or beneficial interest in property, as evidenced by the Deed of Trust, in which MBC claims both an ownership and beneficial interest. The remaining Defendants are individuals which qualify as a "person" under 18 U.S.C. § 1961(3).

22. MBC is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) as it is a corporation formed under the laws of the State of Tennessee. MBC's legitimate business is operating a bail bonding company under the laws of the State of Tennessee, employing "professional bail bondsmen" to write appearance bonds in criminal courts as regulated by the appropriate criminal courts and licensed by State of Tennessee.

23. The RICO Enterprise is engaged in interstate commerce in that its activities and transactions relating to the arrangement of bail bond agreements, collection of bail bond fees and the practice of taking title to Real Property as collateral for possible indemnity on bail bonds in both Shelby County, Tennessee, and DeSoto County, Mississippi, requires movement and communications across state lines and the use of interstate facilities, particularly the mail.

24. Defendants MBC, Hitt, Martin, McGowan and Pittman are either employed by or associated with the RICO Enterprise and have knowingly and intentionally engaged in the conduct of MBC's legitimate business (of writing criminal appearance bail bonds) through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). The pattern of racketeering consists of a fraudulent scheme by MBC, Hitt, Martin, McGowan and Pittman to obtain title to the Real Property of its customers by falsely representing that the collateral provided by the customers will be returned (as required by Tennessee law) when the criminal charges against the criminal defendant are resolved. By making that false representation, customers either sign documents which are blank or not fully completed, or customers provide enough information to the Defendants to create a Deed of Trust which is later signed and notarized, allowing MBC to

file a seemingly executed and notarized Deed of Trust with the appropriate office for recording such Deeds. The scheme to obtain the Deed of Trust fully anticipates the use of the mail because the recording office accepts instruments by mail. MBC has actually used the mail (in all cases which have been discovered, including Ms. Knight's) to send the falsified Deed of Trust to the recording office. In Ms. Knight's case, the mailing was completed either on or immediately before the filing date of the Deed of Trust, which is March 12, 2014.

25. Each Defendant had his/her particular role in carrying out the scheme set out above. Mr. Hitt, who is the sole shareholder of MBC, concocted the scheme to use Deeds of Trust to extract money out of unsuspecting customers who thought they would have no monetary obligation to MBC. Mr. Hitt's primary involvement is evidenced by his own prolific filing of Deeds of Trust naming himself as the grantee or trustee of Deeds related to bail bonds written by MBC. Mr. Pittman, who claims to be the Director of Risk Management for MBC, is effectively the manager of MBC who operates MBC on a daily basis and approves the activities of the independent bail bond agents who write bail bonds and obtain documents from customers. Ms. Martin is the independent bail bonding agent who interacted with Ms. Knight, made the false representation that Ms. Knight would not owe any money or have any obligation to MBC if her daughter showed up in court. Ms. Martin obtained Ms. Knight's signature on the Deed of Trust with full knowledge and intent that she would do whatever it took to get the Deed of Trust recorded, even though it was not notarized when Ms. Knight purportedly signed it. Ms. Martin also allegedly "witnessed" Ms. Knight sign other documents (the Indemnity Agreement and two promissory notes) which Ms. Knight never saw or signed. Finally, Ms. Martin presented the Deed of Trust (after it had been fully completed) to Brooks McGowan, who was acting as an official of the State of Tennessee, when he falsely notarized a signature of the Deed of Trust

8

which he did not witness because Ms. Knight did not "personally appear" before Mr. McGowan. Each of these actors acted intentionally to wrongfully obtain a Deed of Trust from Ms. Knight which each Defendant knew would be mailed to the Register of Deeds and recorded as a lien on Ms. Knight's property. By obtaining the lien under false and fraudulent circumstances, MBC would later use that lien as leverage to demand payment from Ms. Knight on money she does not owe. The independent actions of all the Defendants taken in further of the fraudulent scheme have caused Ms. Knight damages in the form of lost access to the equity in her home.

26. The actions set out above constitute a violation of 18 U.S.C. § 1341 (mail fraud), which forms the basis of the pattern of racketeering activity as defined in 18 U.S.C. § 1961(a) and is, therefore, a violation of 18 U.S.C. § 1962(c).

27. Further, the actions set out above constitute a violation of 18 U.S.C. 1962(b) in that the "debt" which MBC has attempted to collect from Ms. Knight is an "unlawful debt" within the meaning of 18 U.S.C. § 1961(6). The debt is "unlawful" because it is unenforceable under Tennessee law because of the laws relating to usury. Specifically, T.C.A. § 47-14-117 prohibits the collection of "usury or excessive charges" in contracts of debt, and T.C.A. § 47-14-103 sets the collectible rate of interest for debts under Tennessee law in general and under all other statutes which fix a maximum effective rate for particular categories of creditors, lenders, or transactions. Under the statutes related to "professional bail bondsmen," it is specifically prohibited for "professional bail bondsmen" to charge any interest. T.C.A. § 40-11-126(8). MBC claims that Ms. Knight owes a debt with "interest at ten per cent" (which is otherwise undefined in how the interest is calculated). Therefore, the Defendants' concerted actions to "create" a debt with interest related to a bail bond is a violation of Tennessee's laws related to usury. Further, even if the contractual debt of "interest at ten per cent" were upheld, that rate is

9

usurious and excessive under T.C.A. § 47-14-103, which sets the default rate in Tennessee at ten per cent (10%) per annum.

28.     Finally, each of the Defendants knowingly and intentionally engaged in a conspiracy to violate both 18 U.S.C. § 1962(b) and (c), in violation of 18 U.S.C. § 1962(d). The conspiracy involved the agreement of each Defendant to take the independent actions set out above with the agreed upon purpose to obtain a lien on Ms. Knight's Real Property. Mr. Hitt, as the owner of MBC, concocted the scheme which was carried out by MBC's office manager Mr. Pittman, who oversaw the activities of the independent bail bond agent Ms. Martin. Ms. Martin obtained and/or created documents related to Ms. Knight under false promises that Ms. Knight would not owe any money, and Ms. Martin approached Mr. McGowan to "legitimize" the Deed of Trust with the Seal of the State of Tennessee, although Mr. McGowan knew he did not witness Ms. Knight sign the document. This conspiracy had a distinct purpose: to obtain money from Ms. Knight when none was owed. Each Defendant had a pecuniary interest in taking their independent actions in furtherance of the scheme: Mr. Hitt would make money as the sole shareholder of MBC; Mr. Pittman would make money as the office manager; Ms. Martin earned commissions on the collection of money from MBC's customers, and Mr. McGowan would earn money from Ms. Martin. Of course, the money flowed through the otherwise legitimate business of MBC.

29.     The scheme which the Defendants perpetrated on Ms. Knight is a pattern which appears in other cases of MBC's customers. Several Complaints in similar form to this one have been filed with this Court alleging that MBC, Hitt, Pittman and other un-identified bail bond agents falsely obtained Deeds of Trust to collect debts which are either non-existent or prohibited by Tennessee law. Those cases are set out above.

30. Those practices are a regular way of conducting the ongoing business of each Defendant and of conducting or participating in the ongoing enterprise through a pattern of racketeering.

31. On Plaintiff's RICO claim against all Defendants, Plaintiff seeks statutory and/or actual damages of not less than $100,000.00, costs and attorney's fees.

## COUNT TWO: VIOLATIONS OF TILA

32. Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count Two, which is pleaded additionally and alternatively in the event the signatures of Ms. Knight on the above-described debt documents prove to be authentic, and for Count Two, Plaintiff alleges violations of TILA against Defendant MBC.

33. Plaintiff avers that the agreement to defer payment of the bail fee constitutes consumer credit extended for a personal or family purpose within the meaning of TILA, 15 U.S.C. § 1602(g) and (i), and Regulation Z, 12 C.F.R. § 1026.2(a)(12).

34. MBC regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the entity to which the transaction which is the subject of this action is initially payable, making MBC a creditor within the meaning of TILA, 15 U.S.C. § 1602(g) and Regulation Z, 12 C.F.R. § 1026.2(a)(17).

35. MBC violated the requirements of TILA and Regulation Z in the following and other respects:

　　a. By failing to provide the required disclosures clearly and conspicuously in writing, segregated from everything else and in a form which the Plaintiff could keep: any finance charge, the amount financed, a separate itemization of the

    amount financed, the payment schedule, and a statement that the consumer should refer to the appropriate contract document for information about nonpayment, default, the right to accelerate the maturity of the obligation and prepayment rebates and penalties, in violation of 15 U.S.C. § 1638(b) and Regulation Z, 12 C.F.R. § 1026.17;

  b.  By failing to provide a statement that a security interest has been taken in (A) the property which is purchased as a part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type, as required by 15 U.S.C. § 1638(a)(9);

  c.  By failing to provide a statement in the case of a consumer credit transaction that is secured by the principal dwelling of the consumer, in which the extension of credit may exceed the fair market value of the dwelling, a clear and conspicuous statement that (A) the interest on the portion of the credit extension that is greater than the fair market value of the dwelling is not tax deductible for the Federal income tax purposes; and (B) the consumer should consult a tax adviser for further information regarding the deductibility of interest and charges;

  d.  By failing to provide the number, amounts, and timing of payments scheduled to repay the obligation, in violation of 15 U.S.C. § 1638(a)(6) and Regulation Z, 12 C.F.R. § 1026.18(g).

36.    On Plaintiff's TILA claims against Defendant MBC, Plaintiff seeks statutory and/or actual damages and, alternatively, rescission of the credit agreement(s) allegedly secured by the Deed of Trust. Plaintiff also seeks all costs and attorney's fees.

## COUNT THREE: VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT of 1977 (T.C.A. § 47-18-101, *et seq.*)

37. Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count Three, which is pleaded additionally and alternatively, and for Count Three, Plaintiff alleges that Defendant MBC violated the TCPA.

38. Plaintiff alleges that Defendant MBC violated the TCPA by engaging in unfair and deceptive acts and practices in the course of selling their services to the Plaintiff.

39. Defendant MBC is a "person" as defined by the Tennessee Consumer Protection Act, T.C.A. §47-18-103(9).

40. MBC violated the TCPA, specifically T.C.A. § 47-18-104(a) by employing unfair or deceptive acts affecting the conduct of trade or commerce. The unfair or deceptive acts include representing that Plaintiff only signed the Deed of Trust as security for Ms. Williams' appearance in court, and not for any underlying obligation to repay a loan or other extension of credit. Further, pursuant to Tennessee law, any bail bondsman who accepts collateral for a bail bond must return that collateral when liability on the bond is terminated. MBC's practice of obtaining a Deed of Trust and alleging that it is security for a debt (and not just security for a potential claim of indemnity if a bail bond is forfeited) violates the TCPA. Specifically, T.C.A. § 47-18-104(b)(12) declares "representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law" an unlawful unfair or deceptive practice. By claiming that the Deed of Trust in this case is security for an unpaid portion of the bail bond premium, when such a transaction is prohibited by Tennessee law, MBC has falsely represented that it has rights which it does not and cannot have and that Ms. Knight has an obligation which she does not have.

41.     As a result of MBC's violation of the TCPA, it is liable to Plaintiff for all actual damages not less than $100,000.00, as well as attorney's fees and costs pursuant to TCPA, T.C.A. § 47-18-109(e)(1).

42.     In addition, to the extent that Defendant's violations were intentional (as opposed to merely negligent), the actual damages to Plaintiff should be trebled pursuant to the TCPA, T.C.A. § 47-18-109(a)(3).

## **COUNT FOUR: FRAUD**

43.     Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count Four, which is pleaded additionally and alternatively, and for Count Four, Plaintiff alleges that Defendants MBC, Hitt, Martin, McGowan and Pittman committed fraud individually and as part of a civil conspiracy.

44.     Defendants individually and as part of conspiracy made material representations of fact to Plaintiff Deirdre Knight.  First, MBC and its owner Hitt employed its agents/employees to make the representation that by signing a Deed of Trust, Ms. Knight was only securing the appearance of her daughter Ms. Williams in court and not pledging security for any underlying debt.  Those representations are made in the Indemnity Agreement and Promissory Notes (which are silent as to any security) and in the Deed of Trust (which is silent as to any underlying debt).  Ms. Martin continued making that misrepresentation when she explicitly told Ms. Knight that the security would be returned if Ms. Williams showed up in court.  Finally, Mr. McGowan made a material misrepresentation that he witnessed the signing of the Deed of Trust when he was not even present at Ms. Knight's house during the conversation between Ms. Martin and Ms. Knight.  The false representations, taken separately and as a whole in furtherance of their conspiracy, were relied upon by Ms. Knight to her detriment when she signed any document with Ms. Martin

14

and/or MBC. To date, Ms. Knight continues to suffer damages because her house remains encumbered to the extent of $100,000 even though MBC itself claims that she owes $7,450 "plus accrued interest." Mr. Pittman has continued the conspiracy in attempting to collect the fraudulent debt, even signing false Answers to Interrogatories on behalf of MBC in the action pending in Chancery Court in Shelby County, Tennessee. This fraudulent scheme has caused Ms. Knight damages in the loss of access to credit on the equity in her home.

45. On Plaintiff's fraud claim, Plaintiff seeks the damages for the full value of her lost property not less than $100,000.00 and punitive damages against all Defendants jointly and severally.

## COUNT FIVE: PROFESSIONAL NEGLIGENCE/MALPRACTICE

46. Plaintiff re-avers and incorporates by reference the averments made throughout this Complaint into Count Five, which is pleaded additionally and alternatively, and for Count Five, Plaintiff alleges that Defendant McGowan committed an act of professional negligence/malpractice when he notarized the Deed of Trust.

47. Defendant McGowan, as a notary public, acts as an official of the State of Tennessee when exercising his authority as a notary public.

48. A notary public in the State of Tennessee has a duty to ensure not only that a person executing a document in the presence of a notary is the person he/she is claiming to be, but also that the person is executing the document of his/her own free will.

49. By notarizing the Deed of Trust, when he was not in the presence of Ms. Knight (as Ms. Knight has never met or seen Mr. McGowan), Mr. McGowan breached his duty of care in acting as a notary public.

50. Mr. McGowan's breach of the duty of care imposed on a notary public has caused damages to Ms. Knight because, without the false notary, MBC could not have obtained a lien on her home (because the Register of Deeds requires a notary seal on deeds to file them). The damages Ms. Knight have suffered include the loss of access to equity in her house, and damages in the form of attorneys' fees and other costs which will be necessary to clear up the title to her home (which is the subject of a separate action in the Chancery Court of Shelby County, Tennessee).

51. For her claim against Defendant McGowan for professional negligence/malpractice, Ms. Knight seeks damages in an amount to be determined at trial but not less than $100,000, plus costs and attorneys' fees.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

1. On Count One, award Plaintiff actual and/or statutory damages not less than $100,000.00, costs, attorneys' fees and any other relief available under RICO against all Defendants;

2. On Count Two, award Plaintiff actual and/or statutory damages, costs, attorneys' fees and any other relief (including equitable relief) available under TILA against Defendant MBC;

3. On Count Three, award Plaintiff actual and/or statutory damages not less than $100,000.00 (plus treble damages), costs, attorneys' fees and any other relief available under TCPA against Defendant MBC;

4. On Count Four, award Plaintiff actual damages not less than $100,000.00 and punitive damages against all Defendants jointly and severally for fraud;

5. On Count Five, award Plaintiff actual damages not less than $100,000.00 against

Defendant McGowan for professional negligence/malpractice; and

6. Award any other additional relief to which Plaintiff may be entitled at law or equity.

Submitted this 25th day of June, 2018.

        RESPECTFULLY SUBMITTED,

        s/ Matthew F. Jones
        Matthew F. Jones (MS 100430, TN BPR # 25825)
        MEMPHIS AREA LEGAL SERVICES, INC.
        22 N. Front Street, 11th Floor
        Memphis, TN 38103
        (901) 523-8822
        (901) 255-3429 (direct)
        (901) 843-2929 (fax)
        mjones@malsi.org

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been filed using the Court's CM/ECF system which sent notice of the filing to all counsel of record this 25th day of June, 2018.

        s/ Matthew F. Jones